446 A.2d 1332

**COMMONWEALTH of Pennsylvania,**

v.

**Edward J. BULOVAS, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1981.

Filed June 18, 1982.

Reargument Denied Aug. 24, 1982.

Petition for Allowance of Appeal Denied Dec. 3, 1982.

Burton A. Rose, Philadelphia, for appellant.

Alan Sacks, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, MONTGOMERY and LIPEZ, JJ.

MONTGOMERY, Judge:

Appellant Edward Bulovas was convicted, following a jury trial, of rape, involuntary deviate sexual intercourse, criminal conspiracy and kidnapping. Following the denial of post-trial motions and sentencing, he filed a direct appeal. This court affirmed *per curiam* the judgment of sentence. *Commonwealth v. Bulovas*, 251 Pa.Super. 592, 381 A.2d 892 (1977). Appellant's Petition for Allowance of Appeal was denied by our Supreme Court on May 2, 1978. On December 12, 1978, Appellant filed a Petition under the Post-Conviction Hearing Act, 19 P.S. §§ 1180–1 *et seq.* Following a hearing, the Honorable Edward J. Blake denied the requested relief, and Appellant filed the instant appeal.

The incident for which Appellant was convicted began when his co-defendant John Horan abducted a sixteen-year-

old girl at gunpoint. He dragged her into a car where Appellant was waiting. After driving to an isolated area, both men forced her to commit oral intercourse and raped her. Approximately four hours after the initial abduction, the victim was released.

Horan was tried, convicted and sentenced prior to Appellant's arrest. Following his sentencing, Horan gave a statement to Detective Nicholas Bratsis, identifying Appellant as his co-defendant. Horan then testified against Appellant at his trial.

The sole claim on this appeal is that Horan's testimony was induced by a Commonwealth promise to write a letter to the parole board verifying Horan's cooperation and that this "promise" had been concealed from the jury. We disagree and affirm.

In the PCHA proceeding, Appellant had the burden of proving grounds for relief. *Commonwealth v. Jackson*, 494 Pa. 457, 431 A.2d 944 (1981); *Commonwealth v. Stokes*, 294 Pa.Super. 529, 440 A.2d 591 (1982). Assistant District Attorney Michael Stiles testified at the PCHA hearing that:

. . . there was nothing we could do about the sentence, he had already been sentenced . . . . I recall in essence telling him that this was the right thing for him to do. I told him if he testified, there was nothing I could about the sentence. The only thing I might be able to do is write to the Parole Board at the time that he was being considered to tell them in fact that he had testified . . . . N.T. 44–45.

Appellant's attorney testified that his recollection was hazy but that he did recall trying to obtain a commitment from the District Attorney's Office that would be of greater benefit to his client. N.T. 16–17.

At most, this evidence establishes that the District Attorney's office might have agreed to confirm that Horan testified against Appellant, a fact which Horan could easily have made known to the parole board without any assistance whatever from the District Attorney's office. We agree

58

with the trial court that this evidence is insufficient to show that any promises or threats were made to Horan to induce his testimony against Appellant.

Affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I do not agree with the majority that appellant's claim is without merit. On the contrary, I find it persuasive, and believe that we should reverse the order of the lower court and grant a new trial.

Appellant's claim is that he was denied a fair trial because the jury was not told that an assistant district attorney had promised appellant's co-defendant, John Horan, to write a favorable letter to the parole board if he testified against appellant.[1] The lower court rejected appellant's claim, on the following reasoning:

> The defendant also contends that a witness who testi-
> fied against him at trial, one, John Horan, changed his
> testimony as a result of a "deal" being offered by the
> District Attorney. There is absolutely no merit to this
> contention. Mr. Horan was a co-defendant who had testi-
> fied at trial and denied any complicity in the crimes
> charged. Nevertheless, he was convicted and sentenced.
> He received a prison sentence of no less than seven and
> one-half nor more than fifteen years.

> Thereafter, and we might add well after the period
> when the court had the power to alter the defendant's
> sentence, the co-defendant, Horan, agreed voluntarily to

---

1. The Commonwealth argues that appellant has waived this claim for failing to present it on direct appeal or in his PCHA petition. I do not agree. Nothing in the record suggests that appellant knew of the Commonwealth's promise to Horan in time to raise the issue on direct appeal. It was the Commonwealth's duty to disclose this promise at trial. *Commonwealth v. Kurtz*, 219 Pa.Superior Ct. 1, 280 A.2d 410 (1971). Not having done so, it is in no position to argue that appellant should be penalized for learning about the promise only afterwards. Also, contrary to the Commonwealth's assertion, the claim was raised in appellant's PCHA petition. Petition at 2.

testify at Petitioner's trial. Horan did so testify and implicate the Petitioner in the crimes charged. It is quite clear from a multitude of witnesses called at the evidentiary hearing before us that there was no deal, no agreements, no threats, no coercion involved. Mr. Horan came forward to testify for his own motives, but not as a result of any promise made by the District Attorney's Office. Indeed, as stated hereinabove, the co-defendant, Horan, had already been sentenced and that sentence could not be changed legally at the time Horan testified or indicated to the District Attorney's Office that he would testify against the Petitioner herein.

Slip op. at 4–5.

Although the majority subscribes to this reasoning, I cannot.

First, the reasoning suggests that the lower court did not understand appellant's claim. If appellant were claiming that the *quid pro quo* for Horan's testimony was a promise to request a short sentence, then, to be sure, the fact that Horan had already been sentenced when he testified against appellant would be relevant. For then it could be said that Horan's testimony had not been induced by the promise. Since he had already received a long sentence, he would know, when he testified, that the assistant district attorney's promise had been worthless. But appellant does not claim that the *quid pro quo* was a promise to request a short sentence. He claims that the *quid pro quo* was a promise to send a favorable letter to the parole board. The fact that Horan had already been sentenced when he testified against appellant is therefore irrelevant. Since Horan had been sentenced, the assistant district attorney could not promise a short sentence. But he *could* promise a favorable letter, which might result in Horan's early release from prison. The issue is whether that promise induced Horan's testimony against appellant at trial.

Second, the Commonwealth argues that appellant "presented no evidence that [the assistant district attorney] even wrote such a letter to the Parole Board ... or that the Board ever received such a letter ...." Brief for Common-

wealth at 6. This argument equally misses the point, which is not whether the Commonwealth *kept* its promise to Horan but whether by *making* the promise it induced him to testify.

Finally, appellant's claim is supported by the record. Indeed, I agree with appellant's statement in his brief that the conclusion of the lower court was in disregard of the testimony. Appellant's Brief at 13.

At the hearing before the lower court it was uncontroverted that an assistant district attorney had met with Horan and had told him that if he testified against appellant, a favorable letter would be written to the parole board.[2] The assistant district attorney himself, Michael Stiles, who was then Chief of the Felony Jury Unit, testified that a meeting with Horan, his counsel, Richard DiMaio, and another assistant district attorney took place in his City Hall office, N.T. 1/3/80, 43, for the purpose of getting Horan to testify against appellant because Horan "was important to the case." *Id.* 48. Recounting his recollection of the meeting, Mr. Stiles said:

Q. Do you recall what if anything you said to Mr. Horan concerning his testimony at the trial of Edward Bulovas?

A. My recollection is that this was after the time that Mr. Horan had been tried, after the time that Mr. Horan had been sentenced. There was indication given to me that Mr. Horan had named Mr. Bulovas as the responsible party in this matter and I was bringing him down to see whether he would testify against Mr. Bulovas. I in essence asked him that. I recall Mr. Horan initially complaining about that he got a long sentence, that his wife was probably going to leave him, that he would have trouble, might have, probably be endangered in prison if he testified. I have a recollection, a specific recollection of telling him that I didn't really feel sorry for him as a result

2. At trial, Horan denied the fact that any promises had been made to him. N.T. 9/21/76, 2.104.

of what he had done to the complainant in this case, that there was nothing we could do about the sentence, he had already been sentenced.  If he was worried about his security or safety, that we had had other persons in prison testify against defendants and we've been able to protect them and I recall trying to appeal to him that if there was someone else responsible for this as well as he, that he should not be the only person in jail.  *In fact, I recall in essence telling him that this was the right thing for him to do.  I told him if he testified, there was nothing I could do about the sentence.  The only thing I might be able to do is write to the Parole Board at the time that he was being considered to tell them in fact that he had testified, if he did agree to testify.  And I have a recollection of telling him that I didn't even know whether that would affect the parole decision but if he did that, we'd do that.  And I recall him at the end of the meeting,* I don't know whether he left and came back or not, but I recall him just *telling me that he would testify.*  He looked up and he was sort of a pathetic figure, if I recall.  He seemed to me to be acting as though he was going to do the right thing, that he would testify, not to worry about it.  I even recall saying something like, well, we have to know and you can't change your mind.  Before trial we have to know if you're firm about this and he said yes, don't worry about it, he would testify.

*Id.* 44–45 (emphasis supplied).

Mr. Stiles's testimony was corroborated by Horan's counsel, Mr. DiMaio:

Q.  And can you recall the substance of that meeting?

A.  Yes.  The substance of the meeting was that the District Attorney's office really didn't have anything to offer him.  He had already been sentenced.  I don't recall how much time had elapsed but it was well over the period of time in which we could go back to Judge Guarino and get the sentence changed.

And as I recall, the most that could be offered was some consideration, some letter that would be sent to the Parole Board in favor of Mr. Horan as far as his parole status was concerned and something almost in terms of—I'm a little bit hazy on this—almost an implied threat that had he not testified, that perhaps a letter could be sent indicating that he was not cooperating with the Commonwealth, although I'm not sure whether that was actually said or I felt that that could have been a possibility. As I attempted to reap some type of commitment from the District Attorney's office which would be of greater benefit to John Horan other than a letter to the Parole Board so that we could get back in front of Judge Guarino, have me attempt to have Judge Guarino consider the sentence, although the law doesn't actually provide that, if the District Attorney's office didn't interpose an objection, it could have been done. As I understand, it's been done in the past. However, Mr. Stiles was not agreeable to that so it was simply left with the idea that we would do you the favor of sending a letter to the Parole Board in your behalf if you testified and if you didn't testify, you know, I don't know that anything was going to happen.

*Id.* 16–17.

On cross-examination Mr. DiMaio commented further on what he regarded as the assistant district attorney's implied threat that if Horan did *not* testify against appellant, an *un*favorable letter would be sent to the parole board:

Q. And during the course of the conversation when Mr. Horan was present was he told by either of the Assistant District Attorneys or one of them that the only thing that they could do for him would be to write to the Parole Board?

A. Yes.

Q. And would it be accurate to say that Mr. Horan was present when it was indicated to him by either one of the Assistant District Attorneys that if he did not

cooperate that they would write to the Parole Board anyway and oppose parole?

A. I'm not sure whether this was something that Mr. Stiles said. Again, I'm not sure or if it was something that was implied from what he said or something that I inferred or whether or not there was any kind of threat to that effect. I simply don't recall.

Q. We don't want you to put a label on it, but would it be correct to say at least from the general conversation, from the tone of the conversation, you as a practitioner inferred that that was what either or both were saying to Mr. Horan and to you?

[An objection was overruled.]

A. Yes.

*Id.* at 31–32.

It is settled that due process is violated where an offer of leniency made in exchange for a witness's testimony is not made known to the jury. In *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), a co-defendant testified against his accomplice that he had not been made a promise in return for his testimony when in fact the prosecutor had offered to recommend reduction of his sentence. The Court there said:

The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

*Id.* at 269, 79 S.Ct. at 1177.

Similarly, our Supreme Court has held that due process requires that the Commonwealth disclose an offer of leniency made to a witness in exchange for his testimony. *Com-*

*monwealth v. Hallowell*, 477 Pa. 232, 383 A.2d 909 (1978). When such an offer has been made but denied at trial, "rudimentary demands of justice dictate that a defendant's conviction be reversed and a new trial granted . . . ." *Id.*, 477 Pa. at 238, 383 A.2d at 911. *Accord, Commonwealth v. Kurtz*, 219 Pa.Superior Ct. 1, 280 A.2d 410 (1971) (prosecutor had duty to disclose offer of lenience made to accomplice, for knowledge of offer may affect jury's evaluation of credibility of witness).

This principle is especially compelling where, as here, the witness's testimony is crucial to the Commonwealth's case. The record shows that without Horan's testimony, the only evidence linking appellant with the crime was the victim's uncertain identification of him. She had been unable to identify appellant with confidence at a line-up, at which she picked out appellant but said, "I don't know. Number 2 sort of looks like him. But I don't know." N.T. 9/20/76, 1.120 (testimony of victim); N.T. 9/22/76, 3.19 (testimony of officer at line-up). She had also been unable to identify appellant in a photo array a few months after the incident. N.T. 9/22/76, 3.44 (testimony of Detective Bratsis). Appellant's defense was that he had been wrongly identified, N.T. 9/22/76, 3.99 (closing argument of defense counsel), and in support of this defense there was evidence that Horan had a motive to lie, for his brother, who resembled appellant, had been involved with appellant's wife before her marriage to appellant. 9/21/76, 2.142–2.144. In response to appellant's defense, the prosecutor emphasized in her closing argument that Horan "had nothing to gain in this case," N.T. 9/22/76, 3.131, and that "he has already been sentenced, and he had already been serving that sentence, and in no way could his testimony here, in any way, affect that sentence, and, in fact, he was sentenced before he ever talked to Detective Bratsis, and his sentence was never changed by the Court." *Id.* 3.125. *See also, id.* 3.126, 3.127, 3.128, 3.131. This argument might not have been so persuasive if the jury had known of the Commonwealth's promise to Horan that if he testified against appellant, a favorable letter would be sent

to the parole board, perhaps resulting in his early release from prison.

I should reverse and grant a new trial.