610 A.2d 931

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Damon JONES, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1991.

Filed May 21, 1992.

Reargument Denied Aug. 13, 1992.

594

598

Bernard L. Siegel, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Alan Sacks, Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In May of 1983, in a trial by jury in the Court of Common Pleas of Philadelphia, the appellant, Damon Jones, was convicted of two counts of murder of the first degree, six counts of aggravated assault, one count of criminal conspiracy, and one count of possession of an instrument of crime. In 1987, sentences of death were imposed with respect to the murder convictions and terms of imprisonment were imposed for the other offenses. The present direct appeal ensued. We affirm.

## I. BACKGROUND

Appellant's convictions arose from a drug-related massacre in which two persons were killed and six others were seriously wounded in a courtyard at the Richard Allen Housing Project (Project) in the City of Philadelphia. The factual background is as follows.

On August 25, 1982, Sylvester Williams confronted Ernest Wright and demanded that he stop selling drugs in the Project. Williams confiscated the sum of $200.00 from Wright. Later that day, Williams encountered Isaiah Givens and discussed the earlier confrontation with Wright. Givens told Williams that there would be no acts of reprisal from himself, appellant, or Portie Robertson. Nevertheless, on the following day, appellant, accompanied by Givens and Robertson, entered the courtyard of the Project. All three men were carrying handguns. At that time, Williams was near the steps of a building that fronted the courtyard. An unidentified man approached the well-armed trio, whereupon appellant announced, "This is not meant for you. Move." Appellant, Givens, and Robertson then began to fire their weapons. In rapid succession they fired approximately twenty shots towards Williams. Numerous people were in the courtyard at the time, standing near Williams. Two of them, including one seven-year-old child, were killed and six others were seriously wounded. Williams was not

hit. Appellant, Givens, and Robertson fled but were soon apprehended by police.

Appellant, Givens, and Robertson were tried jointly for this crime and all were convicted. In accordance with the jury's verdict in the penalty phase of trial, Givens and Robertson were sentenced to life imprisonment and appellant was sentenced to death.

## II. PRETRIAL

■ Appellant's first contention is that a motion to sever his trial from that of his codefendants was erroneously denied. The record is silent as to the circumstances surrounding the denial of appellant's motion for severance. The motion was not denied by the trial court, but rather by another judge. Appellant has not cited anything in the record indicating the grounds on which the motion rested. The trial court, in preparing its opinion for purposes of this appeal, expressed uncertainty as to the grounds asserted for severance. It speculated that appellant presented his motion to a calendar control judge in proceedings not transcribed, but acknowledged that appellant may have at some time during trial presented a renewed oral motion for severance.

Nevertheless, appellant claims that severance would have spared him prejudice from testimony given by certain alibi witnesses who appeared on behalf of codefendant Givens. Numerous alibi witnesses testified that Givens was not in the courtyard at the time of the shootings. Three of these testified further, however, that they saw appellant and Robertson commit the shootings. Appellant claims therefore that his own defense, which was one of alibi, was inherently contradictory with Givens' defense. While the record provides no basis to determine the grounds actually asserted for severance, we believe that if, as appellant infers, the motion for severance was based on the possibility that appellant's defense might be prejudiced by conflicts with testimony presented by the codefendants, the motion was properly denied.

■■■ It is well established that a motion for severance is addressed to the sound discretion of the trial court, and that its decision will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Chester*, 526 Pa. 578, 589–90, 587 A.2d 1367, 1372–73 (1991), cert. denied, —— U.S. ——, ——, 112 S.Ct. 152, 442, 116 L.Ed.2d 442 (1991). Where, as was the case here, defendants have been charged with conspiracy, joint rather than separate trials are to be preferred. *Id.* See also *Commonwealth v. Jackson*, 451 Pa. 462, 464, 303 A.2d 924, 925 (1973) (joint trials are advisable where multiple defendants are charged with participation in the same criminal acts and much of the same evidence is necessary or applicable to all of the defendants). Severance may nevertheless be proper where a defendant can show that he will be prejudiced by a joint trial. *Commonwealth v. Chester*, 526 Pa. at 590, 587 A.2d at 1372–73.

■■■ Although the possibility of conflicting defenses is a factor to be considered in deciding whether to grant severance, it is clear that more than a bare assertion of conflict is required. *Id.*, 526 Pa. at 590, 587 A.2d at 1373. As stated in *Commonwealth v. Chester*, 526 Pa. at 590, 587 A.2d at 1373, "[t]he mere fact that there is hostility between defendants, or that one may try to save himself at the expense of another, is in itself not sufficient grounds to require separate trials." Further, "[d]efenses become antagonistic only when the jury, in order to believe the essence of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony of his co-defendant." *Id.*

Applying these principles to the present case, it is evident that the essence of Givens' defense was his own non-participation in the crime rather than the involvement of appellant and Robertson. Givens presented many witnesses in support of his defense of alibi, and, of these, only three testified that appellant was involved in the crime. Givens testified in support of his own alibi defense, and he did not, in any way, implicate appellant. Thus, the core of Givens' defense was one of alibi, as was the core of appel-

lant's defense. There is nothing inherently antagonistic about alibi defenses being used by multiple defendants.

While portions of the testimony provided by a few of Givens' alibi witnesses indeed proved to be at odds with appellant's defense that he was not at the scene of the crime, the record does not reveal whether such a conflict was made known to the court when the motion for severance was offered. Even assuming that the conflict was made known, the testimony would not have so affected appellant's defense as to render the decision not to sever the trials a manifest abuse of discretion.

If the severance motion had been granted the Commonwealth would likely have been able, if it desired, to introduce testimony against appellant from the same three witnesses in a separate trial. Hence, granting the motion to sever would not have insulated appellant from the testimony in question.

Further, the testimony was of very doubtful significance, since the Commonwealth produced six or more of its own witnesses who testified that they saw appellant commit the shootings. Quite obviously, too, Givens' alibi witnesses were not believed by the jury. If they had been believed, Givens would not have been found guilty. It is most unlikely, therefore, that their testimony played any role in appellant's conviction.

Thus, the three defendants were charged with conspiracy, making a joint trial advisable. Much of the evidence pertained to all three defendants, rather than to just one. The testimony given by a few of Givens' alibi witnesses, even if the adverse nature of it had been foreseen at the time the motion for severance was made, was not such as would have necessitated that the defendants be tried separately. Further, the trial was a very lengthy one, consuming more than two months. It was characterized by the trial court as one of the most time-consuming homicide trials ever conducted in Philadelphia. A record in excess of seven thousand pages was produced. To have conducted separate trials for the codefendants in this case would have placed a

heavy burden upon the judicial system as well as upon the public. Based upon these considerations, the trial court committed no abuse of discretion in denying the motion for severance.[1]

## III. TRIAL

■ Throughout this lengthy trial, the jury was sequestered. During sequestration, two of the jurors engaged in certain foolish pranks at the hotel where they were staying. Appellant contends that the pranks demonstrated that the jurors were "fools and buffoons," and, therefore, that they were incompetent to render a fair and impartial determination of his guilt or innocence.

■ It is, of course, an accused's right to be judged by a fair and impartial jury of his peers. *Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303 (1972); Pa. Const. art. I, § 9. Unfortunately, within any peer group, there may be persons who at times engage in conduct that is, to say the least, foolhardy. Appellant argues that jurors who engage in even brief episodes of foolish behavior are incapable of engaging in the sober and serious deliberations required of them. We do not agree. When jurors are sequestered during lengthy trials, frustration and boredom may from time to time cause certain unfortunate incidents to occur. Such incidents do not, however, indicate that the jurors are unable to listen to the testimony and render a fair and impartial verdict. Incidents involving juror misconduct do not warrant the declaration of a mistrial unless there has

1. Appellant notes that if the motion for severance had been granted, he would not now be in the position of raising an issue, discussed infra, relating to alleged prejudice arising from admission into evidence of a television news tape that the Commonwealth utilized to rebut certain evidence offered as part of Givens' defense. Appellant does not expressly claim, however, and nothing in the record indicates, that the motion for severance was based upon anything other than the possibility of appellant's alibi defense being contradicted by defenses offered by the codefendants. It appears that the matter of the television news tape was never brought to the court's attention in connection with the motion for severance, but, even assuming *arguendo* that it was, no prejudice accrued. See discussion infra.

been prejudice to the accused. *Commonwealth v. Gockley,* 411 Pa. 437, 457–58, 192 A.2d 693, 703–04 (1963).

Although two of the jurors in this case engaged in incidents that were quite foolish and were not in keeping with the behavior expected of them during their period of sequestration, we do not believe that appellant's right to a fair trial was compromised. The incidents in question were the following.

Slightly more than one month into the period of sequestration, two jurors who were staying on the ninth floor of the hotel exited from their window, stood on the window ledge, and, after attracting the attention of some U.S. Navy personnel who were attending a party on the tenth floor, were hoisted by their arms through a tenth-floor window. The jurors spent approximately ten minutes at the party. While there, each consumed an alcoholic beverage, and one unsuccessfully attempted to make a phone call to his girlfriend. The jurors then exited through the window and were lowered back to their room. The incident occurred during an off-duty dinner hour, and did not take place during deliberations.

Immediately after this incident, the court conducted a hearing to determine whether the actions of the two jurors had tainted the trial in any manner. Testimony was received from the two jurors and from all of the persons who had been at the party in the tenth-floor hotel room. The jurors, as well as the persons who had been at the party, testified that there had been no discussion of the case. Indeed, the jurors expressly told others at the party that they could not discuss the case. Based on this testimony, and the fact that the incident did not occur during the course of deliberations, the court found that no prejudice arose. We agree.

The second incident involved the same two jurors and occurred towards the end of the second month of sequestration. Very late one night, when the jurors were in their hotel rooms, the two jurors in question illicitly procured eight full cans of beer. One of them consumed beer from

four of these cans and the other consumed beer from two, after which one began playfully throwing empty beer cans at the other. The latter, in self-defense, deflected one of the cans. It bounced out of an open ninth-floor window and fell to the sidewalk below. A passerby on the sidewalk reported the incident. Within a short time the hotel manager, security guards, and police converged upon the ninth floor in an effort to arrest the persons responsible. Jostling matches erupted and profanities were exchanged by those involved. The court was contacted, and, after it rendered assurances that the matter would be remedied the following day, the police and security guards withdrew from the scene.

The court conducted a corrective *voir dire* on the morning after this incident. Of the thirteen sequestered jurors, eight testified that they had not seen the incident because they had been sleeping or reading in their rooms, and, hence, that they were not influenced by it in any way. Three other jurors testified that they saw the incident but that their observations had not prejudiced or biased them in any way. Further, the two jurors who were directly involved in the incident were rigorously questioned *in camera* as well as in open court and testified that the incident had not, to any extent, impaired their ability to proceed with a fair and impartial trial. It is indeed logical that the incident would have had no prejudicial effect on appellant's case, since appellant had absolutely no connection with the incident. Further, as was the case with the earlier incident, this incident did not occur during deliberations. We find ample basis, therefore, for the trial court's determination that no prejudice arose.

■ Appellant next contends that the evidence was insufficient to sustain convictions for murder of the first degree. As is our duty in cases where a sentence of death has been imposed, see *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), we have reviewed the sufficiency of the evidence. The Commonwealth pro-

duced testimony from at least six eyewitnesses, including Williams, who saw appellant commit the crime. In view of this testimony, there is no doubt as to the sufficiency of the evidence.

Appellant asserts that, in firing a barrage of twenty bullets at the people in the courtyard, he and his cohorts had no specific intent to kill. This assertion is patently without merit. Specific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Boyd*, 463 Pa. 343, 349–50, 344 A.2d 864, 867 (1975). Further, under the doctrine of transferred intent, criminal responsibility is not affected by the fact that the bullets struck persons other than the one for whom they were apparently intended, Williams. *Commonwealth ex rel. McCant v. Rundle*, 418 Pa. 394, 395–96, 211 A.2d 460, 461–62 (1965) (transferred intent); 18 Pa.C.S. § 303(b)(1).

Next, appellant claims that the prosecutor, during his opening statement to the jury, made remarks that were not properly based on evidence that he planned to introduce. The principles applicable to such a claim are well established. Remarks in a prosecutor's opening statement must be fair deductions from the evidence which he in good faith plans to introduce and not mere assertions designed to inflame the passions of the jury. *Commonwealth v. Hughes*, 477 Pa. 180, 187, 383 A.2d 882, 886 (1978). The prosecution is not, however, required to prove conclusively all statements made during the opening argument. *Commonwealth v. Farquharson*, 467 Pa. 50, 64, 354 A.2d 545, 552 (1976). As long as there is a good faith and reasonable basis to believe that a certain fact will be established, reference may properly be made to it during the opening argument. *Id.* Even if an opening argument is improper, relief will be granted only where the unavoidable effect is to so prejudice the finders of fact as to render them incapable of objective judgment. *Id.*

■ The first of the remarks challenged by appellant was made when, in reference to the incidents involving Williams and Wright and Givens on the day before the crime, the prosecutor stated that "as the result of these incidents, these three defendants came back to even the score." Appellant claims that the prosecutor knew when he made this statement that he would be unable to produce evidence that the crime was committed to "even the score." This contention is without basis. Based upon Williams' testimony regarding his confrontations with Wright and Givens on the day before the crime, there is clear support in the record for an inference that the crime was committed as an act of retaliation. Thus, the prosecutor's remark had a sound basis.

■ The next remark challenged by appellant was made when the prosecutor stated, in reference to the three people who committed the shootings, that "Damon Jones was the leader of this party; Damon Jones commanded the other two." Arguably, it was not proven conclusively that appellant was the leader of the party; but the record does support a reasonable inference that he occupied that role. Appellant was the first one to enter the Project courtyard. He told a bystander, "This is not meant for you. Move." He then immediately drew his gun and began shooting. Based upon this evidence, it is reasonable to infer that appellant was not a mere follower, but rather, that he was acting in a leadership role. The prosecutor's remark was, therefore, supported by the evidence.

■ The next contention raised by appellant is that trial counsel was ineffective for not moving to strike the testimony given by Williams. Appellant alleges that during a hearing on a motion for severance filed by Givens, the pretrial motions judge, i.e., a different judge than the one who presided over the present trial, stated that Williams' trial testimony should be stricken if it turned out that, contrary to the prosecutor's assurances at the hearing, the prosecutor had made a deal with Williams regarding certain unrelated weapons charges that had been lodged against him.

It was Givens' assertion that Williams obtained minimal bail on the weapons charges by making a deal with the prosecution to testify in the present case.

Appellant claims that an assistant district attorney testified at trial that a deal was in fact made with Williams. This deal, it is alleged, should have been disclosed to the defense. Appellant contends that the failure to make disclosure provided a basis to strike Williams' testimony.

Examination of the record reveals, however, that appellant has mischaracterized the testimony given by the assistant district attorney. There was absolutely no testimony that there was a deal regarding bail on the weapons charges. Rather, the witness merely acknowledged telling Williams' counsel that, if Williams "would agree to plead guilty to both of those gun charges, that the Commonwealth would, at the time of sentencing, leave the sentencing up to the judge but would tell the judge the cooperation of Mr. Williams on this trial." Hence, the prosecution was expected to do *nothing* more than inform the sentencing court regarding a matter of public record, to wit, that Williams was cooperative in the present case. This was a matter that, without any assistance from the prosecution, Williams could himself have brought to the sentencing court's attention. The mere promise to tell the court of Williams' cooperation cannot be construed as a "deal" that would necessitate disclosure, let alone require that Williams' testimony be stricken. See *Commonwealth v. Bulovas,* 301 Pa.Super. 55, 446 A.2d 1332 (1982) (disclosure of promises made to obtain testimony).

Other testimony confirmed that no promises were made to induce Williams to testify. Williams testified that there was no deal made with the prosecution. Similarly, the prosecutor who handled the gun charges against Williams testified that he made no recommendation at the time of sentencing. The record simply does not support appellant's contention that a deal was made regarding bail on the gun charges or regarding any other subject.

■ Appellant also claims that the prosecution should have disclosed that one of its witnesses, Williams, was administered a lie detector test. It is alleged that under Pa.R.Crim.P. 305(B)(1) disclosure was mandatory. This claim is without merit.

The record supplies some basis for belief that the lie detector test administered to Williams had no connection with appellant's case. Rather, the test may have been given in connection with the gun charges lodged against Williams. Even assuming *arguendo* that the test was relevant in some way to appellant's case, it is clear that Pa.R.Crim.P. 305(B)(1) did not mandate disclosure. Appellant cites Pa.R.Crim.P. 305(B)(1)(c) as the specific provision requiring disclosure. However, this provision deals only with disclosure of a defendant's prior criminal record, and, thus, is patently inapplicable. In Pa.R.Crim.P. 305(B)(1)(e), there is a requirement that "reports of polygraph examinations or other physical or mental examinations *of the defendant*" (emphasis added) be disclosed. Obviously, Williams was not the defendant in this case, but rather a mere witness. Hence, this disclosure provision, too, is inapplicable. In short, no duty of disclosure rested upon the prosecution.

It is next alleged that the prosecutor posed several improper questions to two of appellant's alibi witnesses during cross-examination. Appellant claims that the questions suggested, without any good faith basis, that the witnesses contrived their testimony to assist in presenting an alibi defense. This allegation is without merit.

■ Cross-examination of one of the witnesses included the following:

Q. Was it ever explained to you that you were supposed to be an alibi witness?

A. Supposed to be?

Q. Yes.

A. No.

Appellant alleges that the question, specifically the phrase "supposed to be an alibi witness," implies that the witness was asked to fabricate testimony. Such an allegation is, however, groundless. The mere fact that one was "supposed" to be an alibi witness does not imply that the testimony given was false. No suggestion of false testimony was made by the prosecutor.

Another of the alibi witnesses was asked the following question about a conversation she had with appellant's counsel:

> Q. When in the course of the conversation was it decided that it was important to cover Damon Jones' whereabouts on August 26 of 1982?
>
> A. I didn't have to cover Mr. Jones' statement or anybody's statement.

Appellant asserts that the question indicated that the witness was expected to "cover up" appellant's whereabouts on the date in question. This claim is patently without basis. The prosecutor plainly used the term "cover," not "cover up." In context, the term would have been understood to mean "discuss" or "explore," not "conceal." In short, appellant's assertion rests upon a clear distortion of the language used by the prosecutor.

The same alibi witness was also asked the following question, which appellant similarly cites as improper:

> Q. Would it surprise you, Miss Turner, that it takes about five minutes and fifteen seconds to drive from 25th and Master to 10th and Poplar?
>
> A. Would it surprise me?
>
> Q. Yes?
>
> A. Nothing surprises me.

To no extent, however, did this question suggest that the witness' testimony was contrived. It simply asked whether the witness knew how long it might take to travel between locations relevant to the crime. Although a proper evidentiary basis had not yet been established to support the question, the basis was later supplied on redirect examina-

tion. No prejudice could have accrued. Absent prejudice, even an improperly posed question would not warrant relief. *Commonwealth v. Upsher*, 497 Pa. 621, 627, 444 A.2d 90, 93 (1982).

The final allegedly improper portion of the prosecutor's cross-examination of this alibi witness was one in which the witness was asked about a newscast that she had seen pertaining to the crime:

Q. What did they say on this newscast that was so vivid in your imagination—strike that—so vivid in your memory?

A. About a baby being killed at the Richard Allen [Project].

It is claimed that the prosecutor's use of the word "imagination" was not a mere verbal slip but rather that it was intended to cast doubt upon the witness' veracity. However, the prosecutor immediately and clearly corrected himself. There is no reason to believe that appellant was prejudiced by this matter.

 Appellant next contends that trial counsel was ineffective for failing to object when the prosecution impeached one of its own witnesses. This allegedly occurred during redirect examination of Williams, when the prosecutor asked whether Williams remembered giving a certain statement to the police. The statement, in relevant part, was as follows:

Q. Do you know why they fired at you and your friends?

A. Yes, because I told them they could not sell no drugs down in the project, and I took some money from Ernest Wright. That was the day before the shooting.

Appellant asserts that Williams had testified repeatedly on direct examination that "he did not know" why the shootings occurred. Appellant claims that it was error to permit the statement to be used to impeach such testimony, in that a response that the witness "did not know" was inadequate to trigger the admission of a prior inconsistent

statement. See generally *Commonwealth v. Moore*, 462 Pa. 231, 234–35, 340 A.2d 447, 449–50 (1975) (limits upon impeachment of one's own witness through introduction of a prior inconsistent statement).

Examination of the record reveals, however, that appellant has falsely characterized Williams' testimony. Appellant cites three places in the record where Williams allegedly testified on direct examination that he did not know why the shootings occurred. A review of these citations reveals, however, that they consist of one instance of direct testimony and two instances of testimony on cross-examination. In *none* of these instances did Williams state that he did not know the reason for the shootings. Rather, he testified that he did not know at whom the defendants were shooting when they fired their weapons towards the steps where he and his friends were sitting in the Project courtyard. Williams' statement to police that he and his friends were fired upon because of confrontations that he initiated with respect to drug dealing in the Project was not, therefore, inconsistent with this testimony. Further, the police statement was in perfect accord with Williams' testimony on direct examination regarding confrontations with Wright and Givens on the day before the shooting.

In short, the record provides no support for appellant's claim that the prosecution used the statement as a prior inconsistent one for impeachment purposes. It was only after Williams had been subjected to exhaustive cross-examination that the prosecutor inquired on redirect examination whether Williams recalled various portions of the statement, including the portion at issue here. Cross-examination had focused on numerous other portions of the statement, in an effort to impeach Williams' testimony, and had inquired into the possibility that there was a "deal" made with the prosecution whereby Williams would testify against the defendants in order to obtain favorable treatment in connection with unrelated weapons charges that had recently been lodged against him. Plainly, the prosecutor used the statement as a prior consistent one, and this

was permissible to rehabilitate the witness and to rebut any inference that Williams had recently fabricated his testimony to obtain favorable treatment from the prosecution. *Commonwealth v. Byrd,* 490 Pa. 544, 558, 417 A.2d 173, 180 (1980) (admissibility of prior consistent statements); *Commonwealth v. Bennett,* 471 Pa. 419, 424–25, 370 A.2d 373, 376 (1977). See also *Commonwealth v. Cruz,* 489 Pa. 559, 566, 414 A.2d 1032, 1036 (1980) (prosecution permitted to admit prior consistent statement, in its entirety, where defense had first employed portions of it in an effort to impeach the prosecution's witness).

Thus, appellant's contention that the prosecution improperly used the statement to impeach its own witness is meritless. Trial counsel cannot, therefore, be deemed ineffective for failing to raise this claim. See *Commonwealth v. Williams,* 500 Pa. 226, 229, 455 A.2d 632, 633 (1983) ("Counsel is not ineffective when he fails to assert a baseless claim.").

■ Appellant further contends that the trial court erred in allowing the prosecution to introduce certain rebuttal evidence. The first challenged item of such evidence consisted of an audio/videotape of a television newscast that depicted the crime scene. Appellant asserts that the tape did not constitute proper rebuttal evidence, and that it contained an inadmissible hearsay comment by a newscaster that the shootings may have been related to drugs.

We find no error in the admission of the tape. The tape, which was very brief in duration, served to contradict the testimony of two witnesses who testified for Givens' defense. For this purpose, it was properly admitted.

One of these witnesses testified that he first heard of Givens' arrest via the television newscast in question. The tape of the newscast established, however, that Givens' name was not even mentioned. Hence, the tape served to indicate that the witness had a faulty recollection of events or that he was fabricating his testimony.

Another defense witness, Givens' mother, testified that she was approximately one and one-half blocks from the crime scene when the shootings occurred, that Givens was with her at that time, that she did not hear gunfire, and that she did not hear any police activity such as sirens following the shootings. The tape demonstrated, however, that there was a tremendous amount of police activity after the shootings occurred. If the witness had been located where she claimed to have been, she would likely have heard the gunfire and numerous police sirens. The credibility of the witness' testimony was challenged, therefore, through use of the tape.

Insofar as appellant's assertion that the tape contained inadmissible hearsay, it is clear that the tape was not offered to establish the truth of any statement that it contained. Hearsay is an out-of-court statement used to prove the truth of the matter asserted therein. See *Commonwealth v. Green*, 525 Pa. 424, 455, 581 A.2d 544, 559 (1990). The tape was not used to establish the truth of the newscaster's comment that the shootings might have been drug-related. Moreover, the court clearly instructed the jury that the tape was "pictorial, not testimonial." The newscaster's comment was of little significance, too, since the jury had already been informed through the testimony of Williams that the shootings may have been drug-related. In short, appellant was not prejudiced by the rebuttal of Givens' defense testimony.

Appellant further asserts that certain portions of the prosecution's rebuttal evidence exceeded the scope of defense evidence, and, hence, that rebuttal exceeded its proper bounds. Specifically, it is alleged that, because the defense presented testimony that appellant was at a tavern at the time of the shooting, it would have been proper for the prosecution to produce evidence that he was not at the tavern at that time, but that the proper scope of rebuttal was exceeded when the prosecution offered eyewitness testimony that appellant was at the crime scene instead. This contention is patently without merit. Appellant's alibi

evidence and the prosecution's rebuttal evidence were focused upon the very same issue, to wit, appellant's whereabouts at the time of the shootings. By showing that appellant was at the crime scene rather than at a tavern, the prosecution effectively rebutted appellant's alibi defense.

■ Appellant further claims that the proper scope of rebuttal was exceeded when testimony was introduced from police detectives who briefly described steps taken to locate appellant after the crime. They testified that they stopped at several residential addresses in an effort to locate appellant. Appellant characterizes this as evidence of self-concealment, and thus of consciousness of guilt, which should have been offered as part of the prosecution's case-in-chief. See generally *Commonwealth v. Colson,* 507 Pa. 440, 464–65, 490 A.2d 811, 823–24 (1985) (evidence of flight or self-concealment supports inference of guilt), cert. denied, 476 U.S. 1140 (1986).

If testimony regarding steps taken by police to locate appellant is regarded as evidence of appellant's self-concealment, the mere fact that such evidence could have been introduced as part of the prosecution's case-in-chief rather than on rebuttal is not in itself a basis for reversal. *Commonwealth v. Hickman,* 453 Pa. 427, 432, 309 A.2d 564, 567 (1973). Further, evidence of self-concealment served indirectly to rebut the defense testimony as to alibi, thereby providing a reason for its introduction on rebuttal rather than in the case-in-chief.

The prosecution introduced evidence, in its case-in-chief, that appellant fled from the crime scene. Evidence of subsequent self-concealment, therefore, served to reinforce the inference as to consciousness of guilt that had already been created. Further, by reinforcing that inference, evidence of self-concealment served, in effect, to rebut the testimony of defense witnesses who claimed that appellant was not present when the crime occurred.

 Admission of rebuttal evidence is a matter within the sound discretion of the trial court. *Commonwealth v. Miller,* 490 Pa. 457, 471, 417 A.2d 128, 136 (1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). We perceive no abuse of discretion here.

It is next alleged that trial counsel was ineffective for failing to object to comments made by the prosecutor during his closing argument. Appellant has cited nineteen separate excerpts from that argument which he alleges to have been prejudicial and inflammatory. However, many of these excerpts are so innocuous as not to warrant serious discussion. Examples would include the prosecutor's warning that the jurors should not be influenced by the fact that appellant "appears to be a nice young man," and his admonition to jurors that, in reaching a verdict, they should "do what [they] think is right."

Appellant also claims that the excerpts contain misstatements of the evidence, extraneous comments, aspersions upon the integrity of defense counsel and the defense strategy, and unfair stigmatizations of the defendants. Cited by appellant are a reference to the defense as a "Chinese menu defense," repeated mention of the fact that one of the victims in this case was a seven-year-old child, inferences that the defense had intentionally caused the trial to consume more time than was necessary, an assertion that the defendants had "cavalier" and "cheerful" attitudes about the commencement of trial, a brief assertion that the "community has waited to be heard on this kind of conduct," and a comment that, *if the prosecution's testimony is believed* then the defendants comprised a "murdering, child-killing, backshooting trio" that could be likened to "slaughterers" or "executioners."

We have reviewed all nineteen of the excerpts cited by appellant and find none which would warrant relief. Nearly all of the comments were justified as having a reasonable basis in the record and as being within the bounds of vigorous oratory permitted a prosecutor in closing argument. See *Commonwealth v. D'Amato,* 514 Pa. 471, 489,

526 A.2d 300, 309 (1987). Even assuming, *arguendo*, that certain of the comments may have tested the bounds of propriety, it is clear that none were of such an inflammatory nature that counsel's failure to object could have resulted in prejudice to the defense. See *id.*, 514 Pa. at 495, 526 A.2d at 312. See also *Commonwealth v. Strong*, 522 Pa. 445, 454, 563 A.2d 479, 483 (1989) (prosecutor's comments not reversible error unless the unavoidable effect was to prejudice the jury, creating a fixed bias and hostility such that the jury could not weigh the evidence objectively and render a true verdict), cert. denied, 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 775 (1990).

 Appellant next alleges that the trial court's charge to the jury was defective. First, it is asserted that, when the court summarized the evidence, it did so in a biased manner that so favored the prosecution's evidence as to amount to an expression of opinion that the prosecution's witnesses were telling the truth and that the alibi witnesses were lying. See *Commonwealth v. Whiting*, 501 Pa. 465, 469, 462 A.2d 218, 220 (1983) (summary of evidence contained in charge to jury must remain impartial). Our review of the charge, however, reveals no basis for appellant's assertion.

The court's summary of the evidence contained a lengthy, thorough, and impartial review of testimony provided by all of the witnesses at trial, including those of both the prosecution and the defense. Appellant's alibi evidence was described in the summary, and it was not in any way deprecated by the court. Further, the court did not express any opinion as to the veracity of the defense or prosecution testimony.

Appellant is dissatisfied that the court did not include in its summary a discussion of the extent to which the defense challenged, through cross-examination, the accuracy of eyewitness testimony identifying appellant as a perpetrator of the crime. We find no error, however, in the court's having focused its summary upon a discussion of testimony elicited on direct examination. More than eighty witnesses testified

at trial, and, as it was, the summary consumed at least seventy pages in the record. The testimony of defense witnesses was described with every bit as much thoroughness as was that of prosecution witnesses. To have extended the summary to delve into testimony elicited on cross-examination of all these witnesses would have been completely unmanageable.

Further, the court clearly cautioned that the summary was being offered only to refresh the jurors' recollections and that it was not intended to be a recitation of all of the testimony. The jurors were instructed to recall and evaluate all of the testimony, including that presented on both direct and cross-examination. With regard to the prosecution's eyewitness identification testimony, a thorough instruction was given as to the manner in which such testimony should be weighed and evaluated. See *Commonwealth v. Yarris*, 519 Pa. 571, 600–02, 549 A.2d 513, 528 (1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989) (court did not err in focusing its evidentiary summary upon testimony elicited on direct examination of identification witnesses, given that the jury was instructed as to how to evaluate identification testimony). Thus, we find no error in the trial court's summary of the evidence.

The next portion of the charge challenged by appellant is the instruction on voluntary manslaughter. The court thoroughly instructed the jury on the substantive elements of the crime of voluntary manslaughter, as was proper under precedents in effect when the present trial was conducted. See *Commonwealth v. Manning*, 477 Pa. 495, 384 A.2d 1197 (1978). The instruction defined both types of voluntary manslaughter, to wit, a killing committed under sudden and intense passion resulting from serious provocation, 18 Pa.C.S. § 2503(a), and a killing committed under an unreasonable belief that it was justifiably necessary in self-defense, 18 Pa.C.S. § 2503(b).[2]

2. It may be noted that, if a new trial were to be granted in this case, appellant would not be entitled to an instruction on "unreasonable belief" manslaughter, though at the time of appellant's trial such an

In charging the jury on voluntary manslaughter, the court made a comment that there was "little, if any, evidence" to support such a verdict. Appellant claims that this was error. The record demonstrates, however, that the court was accurate in its characterization of the evidence. There simply was no evidence that the killings in this case met the definition of voluntary manslaughter.

The court nevertheless fully informed the jury of its power to return a verdict of voluntary manslaughter, and stated repeatedly that voluntary manslaughter should be given consideration equal with all the other permissible verdicts in this case. It instructed the jury that, regardless of whether the facts would support such a verdict, a verdict of voluntary manslaughter could be returned. It also repeatedly told the jury that the court's opinion of the evidence was not binding, and that the jury was the sole fact-finder in the case.

It is well established that, where, as in this case, a defendant is on trial for murder and the trial court offers its opinion that the evidence would not support a verdict of voluntary manslaughter, there is no error so long as the court's characterization of the evidence is accurate, the jury has been informed of its power to return a verdict of voluntary manslaughter whether supported by the evidence or not, and the jury has been instructed that it is not bound by the court's opinion of the evidence. *Commonwealth v. Milton*, 491 Pa. 614, 617, 421 A.2d 1054, 1055 (1980); *Commonwealth v. Bennett*, 471 Pa. at 426–28, 370 A.2d at 376–77. Under these standards, the trial court's expression of opinion did not constitute error.

## IV. DEATH SENTENCE

Appellant raises several issues pertaining to the constitutionality of the death penalty statute, 42 Pa.C.S. § 9711.

instruction was proper. See *Commonwealth v. Carter*, 502 Pa. 433, 443, 466 A.2d 1328, 1332–33 (1983) ("unreasonable belief" manslaughter charge is only to be given when requested, where the offense has been made an issue in the case, and where the evidence reasonably would support such a verdict).

This Court has previously addressed all of these issues, and has upheld the constitutionality of the statute. Hence, only a brief discussion of such issues is warranted.

■ It is asserted that the language of the statute, at 42 Pa.C.S. § 9711(c)(1)(iv) (weighing of aggravating and mitigating circumstances), and the jury instructions which were given in conformity therewith, could have led jurors to believe that each of the mitigating circumstances enumerated in the statute should not be taken into account unless there was unanimous agreement as to the existence of the particular mitigating circumstance, thus violating the dictates of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The same argument has already been thoroughly considered and rejected by this Court. *Commonwealth v. O'Shea,* 523 Pa. 384, 410, 567 A.2d 1023, 1035–36 (1989), cert. denied, —— U.S. ——, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990); *Commonwealth v. Frey,* 520 Pa. 338, 346–48, 554 A.2d 27, 30–31 (1989), cert. denied, 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990).

■ Appellant next asserts that, because 42 Pa.C.S. § 9711(c)(1)(iv) provides for mandatory imposition of a sentence of death in cases where there are one or more aggravating circumstances and no mitigating circumstances, the jury is accorded inadequate discretion over sentencing. This argument has likewise been rejected by this Court. *Commonwealth v. Peterkin,* 511 Pa. 299, 327–28, 513 A.2d 373, 387–88 (1986), cert. denied, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). See also *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990).

■ It is also argued that, because 42 Pa.C.S. § 9711(c)(1)(iv) does not specify a burden of proof to be used in weighing aggravating and mitigating circumstances, the statute is unconstitutionally vague. This argument, too, has been rejected by this Court. *Commonwealth v. Peterkin,* 511 Pa. at 326 n. 18, 513 A.2d at 387 n.

18; *Commonwealth v. Zettlemoyer*, 500 Pa. at 66–67, 454 A.2d at 963–64.

■ The next contention raised by appellant is that the prosecutor's closing argument in the penalty phase of trial was inflammatory and prejudicial. Specifically, appellant complains that, at one point in the argument, the prosecutor raised his voice in a state of emotional excitement. The court promptly advised the prosecutor to "keep the tone down," however, and instructed the jury "not to be impassioned" and to "weigh the content of the verbiage, not the delivery of the verbiage." The prosecutor proceeded with his argument, complying with the court's directive to be more moderate in tone. The prompt curative instruction was more than adequate to prevent the enthusiasm of the prosecutor from inflaming the passions of the jury. See *Commonwealth v. Martinolich*, 456 Pa. 136, 148–50, 318 A.2d 680, 687–88 (1974) (adequacy of curative instructions), appeal dismissed and cert. denied, 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974).

■ Several comments made by the prosecutor in his closing argument are also challenged as prejudicial. In discussing the penalty to be imposed, the prosecutor posed a rhetorical question to the jury, namely, "Will you get soft in the heart?" In asking the jury to find that aggravating circumstances were established by the evidence, the prosecutor stated, "I am asking you to do what you are duty-bound to do." Finally, in apparent response to certain defense arguments that were designed to evoke pity from the jury, the prosecutor remarked, "I mean, are we into this new morality now or are we into 'I'm going to make you feel sorry for doing what you got to do?'" None of these comments were of a highly inflammatory nature, and all were within the bounds of oratorical flair accorded a prosecutor during his summation in the penalty phase of trial. See *Commonwealth v. Banks*, 513 Pa. 318, 354–55, 521 A.2d 1, 19 (1987), cert. denied, 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987).

█ The aggravating circumstances found in this case, applicable to both counts of murder in the first degree, were that "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense," 42 Pa.C.S. § 9711(d)(7), and that "[t]he defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable," 42 Pa.C.S. § 9711(d)(10). The facts of this case, as heretofore described, clearly establish that appellant created a risk of death to others by firing a gun into the crowded courtyard, as is evidenced by his resulting convictions for six counts of aggravated assault. The record clearly establishes too that appellant had a prior conviction for murder in the first degree, such conviction having taken place in January of 1983 as a result of a killing committed in 1981. Hence, the record fully supports the jury's findings as to aggravating circumstances. See 42 Pa.C.S. § 9711(h)(3)(ii) (review of whether aggravating circumstances are supported by the evidence).

With regard to the jury's finding that none of the mitigating circumstances specified in 42 Pa.C.S. § 9711(e) was present, a review of the record reveals that the defense offered no evidence of mitigating circumstances. Appellant did not testify and no evidence was offered on his behalf at the penalty hearing. Defense counsel did, however, argue to the jury that appellant's age should be considered as a mitigating factor, but an objection was sustained when he expressed his belief that at the time of the offense appellant was nineteen years of age. Appellant's age was not established by the evidence, and nothing in the record indicates that his age, whatever it may have been, was particularly noteworthy.

Despite the ample basis for the jury's findings that two aggravating circumstances and no mitigating circumstances were present, appellant contends that these findings were

attributable to prejudicial instructions from the court. This contention is without merit.

Specifically, appellant claims that the jury was erroneously instructed that there *was* evidence of an aggravating circumstance in that appellant's conduct created a risk of death to others. This claim is groundless. The record establishes that the jury was instructed only that evidence "relevant to" such an aggravating circumstance was introduced. To *no* extent was the jury instructed that the aggravating circumstance was proven. The court clearly informed the jury that its duty was to determine whether proof of the aggravating circumstance was established.

Appellant also claims that the jury was erroneously instructed that little, if any, evidence of any sort of mitigation existed, and that the *only* mitigating factor that could be considered was age. This claim too is meritless. The actual instruction given by the court was that the mitigating circumstance *as to which evidence was presented* was that of age. This instruction was certainly not prejudicial to appellant, since there had not in fact been evidence introduced as to *any* other mitigating circumstance. The court further instructed that, with reference to the factor of age, "[i]t would appear in intellectual honesty that there was little evidence, if any, presented at the hearing." Again, the instruction accurately reflected the evidence, for there was not any evidence establishing appellant's age at the time of the crime. The court nevertheless told the jurors to determine whether age was a mitigating factor, and told them it was permissible to form an opinion regarding appellant's age on the basis of his behavior and physical appearance. At no point did the court state that the *only* mitigating factor that could be considered was age; hence, there is no basis for appellant's assertion that "[a]ny other evidence of mitigation," 42 Pa.C.S. § 9711(e)(8), which was listed on the verdict slip as a possible mitigating circumstance, was foreclosed from consideration.

■ Appellant next claims that trial counsel was ineffective at the penalty hearing, citing a failure to present mitigating evidence as to appellant's age. Specifically, it is asserted that appellant's mother could have been called as a witness to establish that appellant was nineteen years of age when he committed the present murders. While it is true that the record contains no evidence establishing appellant's *exact* age at the time of the offense, there was testimony that appellant was youthful. A witness testified that appellant was too young to be served alcoholic beverages in a bar and that he was merely a "little boy." While it was certainly dubious to characterize as a "little boy" a nineteen year-old male who, in 1981, had committed murder in the first degree, the fact that appellant was rather youthful was nevertheless fully brought to the jury's attention. Also, the jury had observed appellant during this very lengthy trial, thereby obtaining firsthand a perception of his age. Significantly, too, the age of nineteen years is hardly so young as to provide counsel with a compelling reason to bring that exact age to the jury's attention. As earlier discussed, counsel did argue youth as a mitigating factor, and the court instructed the jury accordingly. Under these circumstances, no prejudice could have arisen from the failure to establish appellant's *exact* age.

■ Counsel is also alleged ineffective for failing to "present witnesses that might have given the jury some leeway to impose life imprisonment." This vaguely worded allegation provides little basis for our review, since appellant has not specified the names of the potential witnesses or the subjects of their possible testimony. The record supplies grounds to infer, however, that appellant is referring to witnesses who could have provided limited testimony as to his character as a youth. However, counsel testified at an evidentiary hearing on ineffectiveness that the witnesses failed to make known their willingness to testify at the time of trial. Counsel further testified that, if character witnesses had been utilized, the prosecution on cross-examination or rebuttal would have introduced some very damag-

ing evidence of appellant's bad character. Substantial evidence of appellant's bad character was known by counsel to be in the hands of the prosecution. Counsel very reasonably decided to avoid the introduction of such evidence. Hence, counsel was not ineffective with regard to presentation of witnesses at the penalty hearing.

Appellant also alleges that counsel failed to make a reasonable argument in favor of a sentence of life imprisonment. Examination of the record reveals, however, that counsel did argue for imposition of a life sentence. His primary argument was that appellant's age should be regarded as a mitigating factor. Appellant contends that, in addition to this argument, there were a "myriad of arguments" that should have been presented. Again, this vaguely worded claim provides little basis for our review, since appellant has given virtually no indication of what such arguments might have been. The only one that has been specified is that counsel should have explained to the jury that life in prison is different from life outside prison, thereby emphasizing that a sentence of life imprisonment is a harsh sentence. However, the fact that life in prison is different from life outside prison is so inherently obvious that it is inconceivable that the jury would have needed to be so informed. Further, the closing argument given by counsel for one of the codefendants in this trial stressed that life imprisonment is indeed a harsh penalty. The jury was certainly cognizant, therefore, of the nature of such a penalty.

In accordance with our duty, under 42 Pa.C.S. § 9711(h)(3)(iii), to review sentences of death from the standpoint of their proportionality to sentences imposed in similar cases, *Commonwealth v. Zettlemoyer*, 500 Pa. at 63, 454 A.2d at 961, we have reviewed the sentences imposed upon appellant in light of sentencing data compiled and monitored by the Administrative office of Pennsylvania Courts. See *Commonwealth v. Frey*, 504 Pa. 428, 443, 475 A.2d 700, 707–08. We perceive no excess or disproportionality in the sentences imposed. Further, the record does

not provide any basis for belief that the sentences were the "product of passion, prejudice or any other arbitrary factor," 42 Pa.C.S. § 9711(h)(3)(i). Accordingly, the sentences must be affirmed.[3]

3. In addition to the issues raised by appellant's counsel, we have reviewed the issues presented in appellant's *pro se* "addendum brief nunc pro tunc" and "reply brief nunc pro tunc." Nearly all of the issues raised *pro se* have already been addressed, since they are mere repetitions of matters raised by counsel. The remainder are clearly lacking in merit. Of these, only a few warrant even brief discussion.

Appellant claims that it was error for the court, during its charge to the jury, to read from a portion of the bill of information alleging that "the named defendant, one of the three, did feloniously kill and slay [the victim]." Appellant asserts that, by reading this bill of information to the jury, the court effectively directed that appellant be found guilty. Such an assertion is groundless. To no extent did the court express an opinion as to the proper verdict. In fact, the court clearly instructed the jury that the bills of information were "merely formal written accusations" and that "the mere fact that the defendants in this case have been arrested and stand accused of criminal acts is in no way, shape, or form, quantitatively or qualitatively, to constitute any evidence against them."

Next, appellant challenges the court's charge on transferred intent, alleging that the charge was lacking in clarity and that it should not have informed the jury that the principle of transferred intent "might be applicable to the case." We have examined the charge and find no deficiency. Upon the facts presented, such an instruction was eminently proper.

Appellant also claims unfair surprise from the prosecution's use of a certain rebuttal witness. The witness was the eleven-year-old sister of the child who was killed in the shooting incident. She testified that she was present when the shootings occurred and that she saw appellant firing a gun. Her testimony was merely cumulative, however, for numerous other witnesses had already testified to appellant's participation in the shootings. The witness never told police of her observations, and, likewise, never told the prosecution of what she had seen until the day that she testified. Clearly, the prosecution cannot be faulted for failing to disclose her availability as a witness in advance, since it was not known that she could testify to any relevant matter. See *Commonwealth v. Colson*, 507 Pa. at 462, 490 A.2d at 822.

Finally, appellant contends that post-trial motions counsel was ineffective for failing to request a continuance at the hearing on trial counsel's ineffectiveness in order to obtain additional testimony from trial counsel. However, because the hearing on ineffectiveness was conducted four years after trial, trial counsel's recollection of the case was extremely weak. The hearing was adjourned so that counsel would have a month to review the case. Subsequently, counsel's recollection remained poor, and counsel repeatedly testified that he did not remember details of the case. There is no reason to believe that, if a further continuance had been obtained, trial counsel would

Judgments of sentence affirmed.[4]

CAPPY, J., files a concurring opinion.

NIX, C.J., dissents.

CAPPY, Justice, concurring.

While I join the majority opinion, I write separately concerning Jones' claim that the trial court improperly foreclosed the jury from considering "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense" pursuant to 42 Pa.C.S. § 9711(e)(8).

I agree with the majority that under the facts of the case *sub judice*, the trial court did not foreclose the jury from considering mitigation pursuant to Section 9711(e)(8). This possible mitigating circumstance was listed on the verdict form, and the trial court properly limited its instructions to mitigating circumstances as to which some evidence was presented. As there was no evidence of record to support mitigating circumstance 9711(e)(8), the trial court was not obligated to specifically instruct the jury as to this mitigating circumstance.

However, in affirming this decision of the trial court, I believe it is important to note that while Jones did not introduce any evidence to support this mitigating circumstance, neither did the district attorney or any other co-defendant. As the jury is entitled to consider any evidence "of record" from whatever source derived, the duty of the trial court to instruct the jury on this mitigating circumstance was not solely contingent upon the lack of evidence

have provided any testimony supportive of appellant's claim. While appellant would have preferred that counsel testify in depth as to all of the ineffectiveness claims, he has not alleged any specific testimony that would likely have been elicited to advance his claims. We find no indication that appellant was prejudiced by the decision of post-trial motions counsel not to seek further testimony.

4. The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor, 42 Pa.C.S. § 9711(i).

introduced by Jones, but also upon the lack of evidence from other potential sources.