J-S25036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                              :                PENNSYLVANIA
                                           :

              v.                          :
                                           :
                                         :

PORTIE ROBERTSON                  :
                                           :

             Appellant         :      No. 458 EDA 2020

Appeal from the PCRA Order Entered January 21, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1111151-1982

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:      **FILED SEPTEMBER 13, 2021**

Portie Robertson (Robertson) appeals from the order denying his sixth petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, in the Court of Common Pleas of Philadelphia County (PCRA court), as untimely.  He maintains that the PCRA court erred in dismissing his petition without a hearing where he asserted the newly-discovered facts exception and alleged a **_Brady_**[1] violation.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **_Brady v. Maryland_**, 373 U.S. 83 (1963) (prosecution's withholding of exculpatory evidence violates the Due Process Clause of the Fourteenth Amendment.)

We take the following factual background and procedural history from the PCRA court's November 16, 2021 opinion and our independent review of the record.

## I.

## A.

As described by the Pennsylvania Supreme Court in **Commonwealth v. Jones**, 610 A.2d 931 (Pa. 1992):

[The convictions in this matter] arose from a drug-related massacre in which two persons were killed and six others were seriously wounded in a courtyard at the Richard Allen Housing Project (Project) in the City of Philadelphia. The factual background is as follows.

On August 25, 1982, Sylvester Williams confronted Ernest Wright and demanded that he stop selling drugs in the Project. Williams confiscated the sum of $200.00 from Wright. Later that day, Williams encountered Isaiah Givens and discussed the earlier confrontation with Wright. Givens told Williams that there would be no acts of reprisal from himself, [Damon Jones], or [] Robertson. Nevertheless, on the following day, [Robertson, Givens and Jones] entered the courtyard of the Project. All three men were carrying handguns. At that time, Williams was near the steps of a building that fronted the courtyard. An unidentified man approached the well-armed trio, whereupon [Jones] announced, "This is not meant for you. Move." [Robertson and his two co-conspirators] then began to fire their weapons. In rapid succession they fired approximately twenty shots towards Williams. Numerous people were in the courtyard at the time, standing near Williams. Two of them, including one seven-year-old child, were killed and six others were seriously wounded. Williams was not hit. [Jones], Givens, and Robertson fled but were soon apprehended by police.

**Jones**, **supra** at 935.

Shortly thereafter, Robertson, Givens and Jones were arrested for the above shooting. On September 4, 1982, Givens gave a statement to police in which he implicated Williams in the unrelated fatal shooting of Linwood Rivers on December 31, 1981. On February 2, 1983, as part of pre-trial discovery, the Commonwealth produced Givens' statement to Robertson (**See** Commonwealth's Motion to Dismiss, 10/22/19, at 6; **Id.** at Exhibit A, Discovery Letter, 2/02/83).

**B.**

Trial in this matter commenced on March 15, 1983, lasted over two months and included the presentation of 80 witnesses. In pertinent part, the Commonwealth presented seven eyewitnesses to the shooting and its immediate aftermath. Williams was one of four witnesses who identified Robertson as one of the three shooters. Robertson's counsel extensively cross-examined Williams about whether there was a deal wherein Williams would receive favorable treatment in his own pending criminal trial on gun charges in exchange for his testimony. In the words of the trial court, the cross-examination:

> served to create some or all of the following adverse and negative inferences which could impeach his credibility as a witness: (1) that the prosecution had offered him a deal for lenient treatment for outstanding firearms offenses; … (3) that his testimony was given with bias for the Commonwealth as a result of "deals" made with the Commonwealth for his testimony; … (5) that he was biased for the Commonwealth since he made a deal for a low bail on his outstanding firearms offenses. (N.T. pp. 661-664, 673[,]

679-680, 683-684, 693-696, 705-708, 718-723, 755-845, 771, 781-799, 810, 840-846, 865-869).[2]

(PCRA Court Opinion, 11/16/20, at 8) (quoting Trial Court Opinion, 6/05/89, at 38) (emphasis omitted).

Williams' pending firearms charges were also addressed in a sidebar conference in which the prosecutor said there were no deals, and that he would only advise the court of Williams' cooperation in this matter at the time of his sentencing if he pleaded guilty to the gun charges, but would make no sentencing recommendation. (**See** N.T. Trial, 3/24/83, at 661-63). Defense counsel acknowledged that the Commonwealth had given him notice of the Commonwealth's intention. (**See id.** 663).[3]

---

[2] The certified record does not contain the full notes of testimony from Robertson's 1983 trial, and the reproduced record only contains segments that purportedly support his claims, not Williams' entire cross-examination. It is an appellant's burden to ensure that the certified record contains all documents necessary for us to conduct meaningful review because "[t]he law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal." **Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa. Super. 2006) (citation omitted). "If, however, a copy of a document has been placed into the reproduced record, or if notes of testimony are cited specifically by the parties or are listed in the record inventory certified to this Court, then we have reason to believe that such evidence exists." **Id.** at 8. Hence, although we could find Robertson's claims waived for his failure to ensure that all necessary notes of testimony are part of the certified record, we decline to do so because we can address his appeal based on the reproduced record and citations provided by the courts and parties.

[3] Robertson represents in his brief that the prosecutor stated in closing that they gave Williams a deal for county time on his gun charges. (**See** Robertson's Brief, at 17). This is a misrepresentation. The record reflects he

*(Footnote Continued Next Page)*

On May 20, 1983, a jury convicted Robertson, Jones and Givens of two counts of first-degree murder and six counts each of aggravated assault, criminal conspiracy and possession of an instrument of crime.

**C.**

At some point after Robertson's trial[4] but before Robertson's sentencing, Williams was arrested for the murder of Rivers and he entered a negotiated guilty plea on September 20, 1985. At Williams' guilty plea hearing, the Commonwealth advised the court that at the time of his sentencing, it would make it known that Williams had cooperated in Robertson's matter and was an essential witness to the homicide. The negotiated plea agreement included Williams pleading guilty to third-degree homicide in exchange for the Commonwealth making a sentencing recommendation of not less than five nor more than ten years' imprisonment on the charge. (**See** PCRA Memorandum of Law, at 3-4) (citing N.T. Williams Guilty Plea, No. CP-51-CR-0320381-1985, 9/30/85, at 2-5, 18-20).[5]

_____

was merely stating what the defense counsel's theory about Williams was. (**See** N.T. Trial, at 5824).

[4] The exact date of the arrest is not apparent from the record, but it is undisputed that it was after Robertson's trial.

[5] Again, Robertson failed to provide this Court with a certified copy of the "newly-discovered documents," including the notes of testimony from Williams' guilty plea and sentencing hearings or the docket from Williams' case file. However, we decline to find waiver and, to the extent we can do so, we
_(Footnote Continued Next Page)_

At Williams' December 6, 1985 sentencing hearing, the court thoroughly questioned counsel, ensuring that Williams' testimony in Robertson's case was not in any way premised on an understanding that he would get favorable treatment in his own case.

> THE COURT: Were any promises made with respect to this case by the district attorney if he gave information in [Robertson's] case?
>
> [The Commonwealth]: No, sir.
>
>          \*     \*     \*
>
> [Defense Counsel]: This incident, sir, the death of Stanley Rivers, occurred prior to the time that Mr. Williams testified. At the time Mr. Williams testified, he was not a suspect in the Stanley Rivers case. His arrest was subsequent to that.
>
>          \*     \*     \*
>
> THE COURT: Now I understand it. [His testimony] had nothing to do with any promises made in this case.
>
> [Defense Counsel]: Yes, your Honor.
>
>          \*     \*     \*
>
> THE COURT: In other words, whatever [Williams] did in [Robertson's] case, he did for reasons not connected with any hope that this court might take that into consideration in [his own murder] case.
>
> [The Commonwealth]: Precisely, your Honor.
>
> THE COURT: Now, if you can briefly tell me what you did.

---

will review his claims that are premised on those documents based on his quotation of them in his memorandum of law in support of his PCRA petition.

> [The Commonwealth]: Briefly … as Your Honor so adroitly pointed out, he did testify on that matter without any consideration of what it could do for him in this case.  Because … he had not yet been arrested in this case. …

(PCRA Memorandum of Law, 6/11/18, at 6) (quoting Williams N.T. Sentencing, No. CP-51-CR-0320381-1985, 12/06/85, at 12-17).  Williams was then sentenced pursuant to the agreement's terms.

**D.**

On June 22, 1987, the trial court sentenced Robertson to two consecutive terms of life imprisonment for the murders and six consecutive prison terms of not less than five nor more than ten years for each of the assault convictions.[6]  This Court affirmed Robertson's judgment of sentence on August 8, 1989, and the Pennsylvania Supreme Court denied further review on March 20, 1990.  (*See Commonwealth v. Robertson*, 565 A.2d 821 (Pa. Super. filed August 8, 1989) (unpublished memorandum), *appeal denied*, 575 A.2d 111 (Pa. 1990)).

Robertson has filed five PCRA petitions, the first of which was denied as lacking merit on May 13, 1998, after the court conducted three evidentiary hearings.  The following four were denied as untimely on May 19, 2003, June 22, 2011, August 13, 2014, and January 20, 2016.  This Court affirmed the denials, the Pennsylvania Supreme Court denied further review, and the

---

[6] Givens received the same sentence as Robertson.  Jones was sentenced to death, which was later replaced with consecutive life imprisonment sentences.

United States Supreme Court denied Robertson's petition for writ of *certiorari* of the August 13, 2014 denial.[7]

On June 11, 2018, Robertson filed this *pro se* PCRA petition, his sixth, in which he claimed that he could avail himself of the newly-discovered facts exception to the PCRA timeliness requirements as well as a **Brady** violation. The PCRA court[8] explains that Robertson specifically claimed:

> [I]nformation in Commonwealth witness [] Williams' criminal file for an unrelated matter shows that Williams and the Commonwealth had entered into a secret deal whereby Williams would testify against [him] in exchange for a more favorable sentence. He argues that the notes of testimony and docket entry that he cites in Williams' file constitute after-discovered evidence and that the "intentional withholding" of [the] Commonwealth's allegedly secret deal with Williams was a **Brady** violation. He further argue[d] that the Commonwealth improperly withheld a police statement provided by his co-defendant [] Givens that implicated Williams in an unrelated homicide.

(PCRA Ct. Op., at 1-2).

---

[7] (**See Commonwealth v. Robertson**, 747 A.2d 419 (Pa. Super. filed September 20, 1999) (unpublished memorandum), *appeal denied*, 749 A.2d 469 (Pa. 2000); **Commonwealth v. Robertson**, 883 A.2d 693 (Pa. Super. filed July 15, 2005) (unpublished memorandum), *appeal denied*, 895 A.2d 549 (Pa. 2005); **Commonwealth v. Robertson**, 64 A.3d 27 (Pa. Super. filed December 19, 2012) (unpublished memorandum), *appeal denied*, 70 A.3d 810 (Pa. 2013); **Commonwealth v. Robertson**, 125 A.3d 444 (Pa. Super. filed July 9, 2015) (unpublished memorandum), *appeal denied*, 125 A.3d 1200 (Pa. 2015), *cert. denied*, 577 U.S. 1083 (2016); **Commonwealth v. Robertson**, 159 A.3d 583 (Pa. Super. filed November 14, 2016), *appeal denied*, 169 A.3d 526 (Pa. 2017)).

[8] Judge Robert Latrone was the trial judge and original PCRA judge. Judge Genece E. Brinkley was assigned Robertson's sixth PCRA petition after Judge Latrone passed away.

The PCRA court appointed counsel who filed three amended PCRA petitions. On October 22, 2019, the Commonwealth filed a motion to dismiss to which Robertson responded. On December 18, 2019, the PCRA court served notice of its intent to dismiss the petition without a hearing. ***See*** Pa.R.Crim.P. 907(1). After receiving Robertson's counseled response to the notice, the court dismissed the petition as untimely and meritless on January 27, 2020. Robertson timely appealed.[9] He and the court have complied with Rule 1925. ***See*** Pa.R.A.P. 1925.

## II.

## A.

"Pennsylvania law makes it clear that no court has jurisdiction to hear an untimely PCRA petition." ***Commonwealth v. Frame***, 244 A.3d 8, 11 (Pa. Super. 2020) (citation omitted). A PCRA petition must be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

---

[9] In reviewing the denial of PCRA relief, our standard of review is limited to whether the record supports the PCRA court's determination and whether its decision is free of legal error. ***See Commonwealth v. Lopez***, 249 A.3d 993, 998 (Pa. 2021).

- 9 -

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. §§ 9545(b)(1). A petition alleging one of the foregoing grounds must be filed within one year of the date the claim could have been presented. *See id.* at § 9545(b)(2). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* at § 9545 (b)(3).

The timeliness requirements of the PCRA are mandatory and do not vary based "on the nature of the constitutional violations alleged therein. To the contrary, the PCRA's timeliness requirements are intended to apply to all PCRA petitions, regardless of the nature of the individual claims raised therein." *Commonwealth v. Howard*, 788 A.2d 351, 356 (Pa. 2001) (citation omitted); *see Commonwealth v. Seskey*, 86 A.3d 237, 242 (Pa. 2014).

In this case, Robertson's judgment of sentence became final on June 20, 1990, which was 90 days after the Pennsylvania Supreme Court denied review and no writ of *certiorari* was filed. Hence, he had one year from that date, or until June 20, 1991, to file a timely PCRA petition. Because his current petition, filed approximately 27 years later, on June 11, 2018, is patently

- 10 -

untimely, Robertson must plead and prove the applicability of one of the exceptions to the time-bar.

**B.**

Robertson argues that he can avail himself of the newly-discovered facts exception because the record he recently acquired from Williams' case at CP-51-CR-0320381-1985 reveal that Williams received a deal in his own murder case for his testimony in Robertson's case based, in part, on the Commonwealth's untruthful statement that Williams was not a murder suspect at the time he testified at trial. Robertson maintains that he exercised due diligence in discovering these facts because he is incarcerated and only was able to access Williams' criminal file when his sister obtained it from the clerk of court's office in 2018. (***See*** Robertson's Brief, at 20, 26-27).

To invoke the newly-discovered facts exception, a petitioner must establish that (1) the facts upon which the claim was predicated were unknown, and (2) they could not have been ascertained by the exercise of due diligence. ***See*** 42 Pa.C.S. § 9545(b)(1)(ii). "Due diligence requires neither perfect vigilance nor punctilious care, but rather requires reasonable efforts by the petitioner, based on the particular circumstances to uncover facts that may support a claim for collateral relief." ***Commonwealth v. Burton***, 121 A.3d 1063, 1071 (Pa. Super. 2015), *aff'd.*, 158 A.3d 618 (Pa. 2017) (citations omitted). The focus of the exception "is on the newly discovered facts, not on a newly discovered or newly willing source for

previously known facts." ***Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008) (citation omitted). "[T]he plain language of the newly discovered fact exception does not call for any assessment of whether the asserted facts appear in the public record." ***Commonwealth v. Small***, 238 A.3d 1267, 1283 (Pa. 2020).

Robertson has failed to demonstrate that the "newly-discovered facts" were unknown at the time of trial or that he has exercised due diligence in obtaining them. Although he maintains that he could not have discovered information in Williams' case file sooner because he had no reason to do so, this is not persuasive. At Robertson's own trial, counsel thoroughly cross-examined Williams about his outstanding gun charges and the possibility of a deal in exchange for his testimony. While this suspected deal was for firearms offenses, not the murder charge about which Robertson now complains, the fact remains that any issue regarding an alleged deal was already part of his case over 30 years ago. Counsel had every reason to investigate Williams further to determine if his guilty plea and sentence on the murder charge, entered after Robertson's trial, reflected that any alleged deal had been entered.

Similarly, Williams was arrested for the Rivers' murder, pleaded guilty and was sentenced **after** Robertson's trial but two years **before** Robertson was sentenced. To allege that Williams' criminal case file was not available to him and that he had no reason to obtain it, under the totality of the

- 12 -

circumstances, is not at all persuasive, particularly where he claims that Williams perjured himself when he said there was no deal and the prosecutor allegedly stated that there was. Hence, Robertson has failed to plead and prove that the facts underlying his claim were unavailable to him at time of trial and could not have been obtained sooner than 2018 with the exercise of due diligence. *See* 42 Pa.C.S. § 9545(b)(1)(ii).

## C.

Moreover, we briefly note that any claim that the Commonwealth failed to disclose that it offered a deal to Williams in exchange for his testimony would lack merit. First, in his co-defendant's appeal, the Pennsylvania Supreme Court expressly found that the notes of testimony from Robertson's trial evidenced that the claim that the Commonwealth failed to disclose a sentencing deal on gun charges pending against Williams or "regarding any other subject" in exchange for his testimony at Robertson's trial lacked merit.[10] *See Jones*, *supra* at 939-40.

_____

[10] Like Robertson, Jones maintained that the prosecutor told the court at sidebar that there was a deal. *See Jones*, *supra* at 939; (Robertson's Brief, at 28-29). However, the Pennsylvania Supreme Court concluded that Jones mischaracterized the prosecutor's statement, and that he only promised to tell the court of Williams' cooperation which "cannot be construed as a 'deal' that would necessitate disclosure, let alone require that Williams' testimony be stricken." *Jones*, *supra* at 939. The High Court further found that:

> Other testimony confirmed that no promises were made to induce Williams to testify. Williams testified that there was no deal made with the prosecution. Similarly, the prosecutor who

*(Footnote Continued Next Page)*

Further, Robertson fails to provide any evidence that an alleged deal existed on Williams' **murder** charge in exchange for his testimony against Robertson. In fact, he admits that he has no direct evidence, but maintains that there is "copious circumstantial evidence to support that assertion." (Robertson's Brief, at 45). However, Robertson's "circumstantial evidence" is mere speculation.

First, although Williams had not been charged with the Rivers' murder at the time of Robertson's trial, Robertson states that "it must be assumed" that the Commonwealth was aware of Given's 1992 statement implicating Williams in the Rivers' homicide. (*Id.*) However, he provides no evidence that Williams was a suspect in the murder or, even if he was, that it was the subject of a deal. (*Id.*). Furthermore, although Robertson argues that a "newly-discovered" docket entry in Williams' criminal case file reflects that the Robertson prosecutor was unavailable to testify on Williams' behalf at a plea negotiation and that this demonstrates that there had been a secret deal, this

---

handled the gun charges against Williams testified that he made no recommendation at the time of sentencing. The record simply does not support appellant's contention that a deal was made regarding bail on the gun charges **or regarding any other subject.**

*Id.* at 939-40 (emphasis added).

- 14 -

claim is wholly unsupported and is mere speculation.[11]  (*See id.* at 46).

Finally, his conclusory argument that the Williams' prosecutor lied at Williams'

sentencing hearing about him not being a murder suspect at the time of

Robertson's trial because he "wanted to keep secret the deal it had reached

with Williams in exchange for his testimony" is unsupported.  In fact, it was

Williams' defense counsel and not the Commonwealth that first represented

to the court that Williams was not a homicide suspect and had not been

arrested at the time he gave his testimony in Robertson's case.  As stated

above, although Givens did give a statement implicating Williams in Rivers'

murder, Robertson provides no evidence that Williams became a suspect at

this time or that, even if he did, there was a deal in place regarding that case

when he testified against Robertson other than mere conjecture.

Finally, the portion of the notes of testimony from Williams' guilty plea

and sentencing hearings reproduced by Robertson in his PCRA memorandum

demonstrate that the Williams' trial court thoroughly questioned counsel about

any potential benefit to Williams on his murder charge in exchange for his

testimony against Robertson, and they conclusively evidenced there was no

such deal.  (*See* PCRA Memorandum of Law, 6/11/18, at 2-5, 6) (citing N.T.

---

[11] As stated previously, Robertson did not provide either this Court or the PCRA court a copy of this alleged docket entry.

Williams Guilty Plea, No. CP-51-CR-0320381-1985, 9/30/85, at 2-5, 18-20 & Williams N.T. Sentencing, No. CP-51-CR-0320381-1985, 12/06/85, at 12-17).

Accordingly, the record clearly reflects that there was no deal contemplated on a murder charge or anything else at the time Williams gave testimony in Robertson's case. As a result, Robertson has failed to plead and prove that the "discovery" of the record in Williams' matter provided him with a previously unknown fact that the Commonwealth should have disclosed,[12] and the PCRA court did not commit an error of law in dismissing Robertson's petition. **See Lopez**, **supra** at 998.

Order affirmed.

President Judge Emeritus Bender joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2021

---

[12] We note that although Robertson's **Brady** claim could fall within the governmental interference exception to the PCRA's one-year filing deadline, he is unable to avail himself of the exception for the same reasons he is due no relief above. **See Commonwealth v. Smith**, 194 A.3d 126, 133 (Pa. Super. 2018), *appeal denied*, 208 A.3d 64 (Pa. 2019); 42 Pa.C.S. § 9545(b)(1)(i).