J-S33019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            : PENNSYLVANIA
                                            :
            v.                              :
                                            :
                                            :
                                            :
KAREEM SANDERS                              :
                                            :
            Appellant                       : No. 353 EDA 2021

Appeal from the PCRA Order Entered January 8, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002068-2018

BEFORE: BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.: **FILED JANUARY 06, 2022**

Appellant Kareem Sanders appeals *pro se* from the order denying his first timely Post Conviction Relief Act[1] (PCRA) petition. Appellant contends that his plea counsel was ineffective resulting in an involuntary guilty plea. We affirm.

We summarize the facts based on the Commonwealth's factual summary at Appellant's guilty plea hearing. On February 28, 2018, the victim Danny Cancel was involved in a "fender bender" with a red car, a verbal argument ensued with the red car's driver, and Mr. Cancel retrieved a revolver and shot the red car, which drove off. N.T. Plea Hr'g, 5/13/19, at 25. Mr. Cancel drove away, pulled into a gas station, and entered the station to pay

---

[1] 42 Pa.C.S. § 9541-9546.

for his gas. *Id.* at 26. Inside Mr. Cancel's vehicle were several passengers, including Mr. Cancel's minor daughter, who was in the back seat and testified at the plea hearing, and Ms. Selena Perrin, who was in the front passenger seat. *Id.* at 26, 47.

While Mr. Cancel was inside the store, Appellant and his friend, Cassieam Hicks, approached the passenger side of Mr. Cancel's vehicle. *Id.* at 26. Appellant opened the front passenger door while holding a firearm and began screaming at Ms. Perrin. *Id.* Mr. Cancel saw the disturbance, exited the store, and approached his vehicle, where words were exchanged. *Id.* Mr. Cancel retrieved his five-shot revolver,[2] fired the weapon, and killed Mr. Hicks. *Id.* Mr. Cancel then shot and wounded Appellant, who was attempting to flee. *Id.* at 27. Mr. Cancel emptied his revolver, Appellant stopped, and Mr. Cancel turned to run. *Id.* at 28. Appellant fired two shots, with one bullet killing Mr. Cancel.[3] *Id.* The bullet struck Mr. Cancel's side, travelling from his back to his front. *Id.* at 29.

---

[2] Appellant's guilty plea hearing did not always detail certain events, *e.g.*, how Mr. Cancel retrieved his revolver.

[3] At this juncture, the trial court noted the Commonwealth's position that Appellant was under an unreasonable belief that self defense was justified. N.T. Plea Hr'g, 5/13/19, at 28 (referencing 18 Pa.C.S. § 2503(b)); *id.* at 29 (assistant district attorney explaining that Mr. Cancel was the aggressor after the "fender bender," Mr. Cancel escalated by firing at Mr. Hicks, but when Mr. Cancel "had no ammunition [and] he was no longer a threat," Appellant shot and killed Mr. Cancel).

After the Commonwealth summarized the facts, the trial court conducted an on-the-record guilty plea colloquy of Appellant, which we quote in further detail below. We state the subsequent procedural history as presented by the PCRA court:

On May 13, 2019, [Appellant] entered a guilty plea to one count of voluntary manslaughter, and one count of possession of firearms. On the same day, he was sentenced to not less than 10 nor more than 20 years in [prison] on the voluntary manslaughter charge, and a concurrent 5-10 year sentence on the firearm charge.

On January 3, 2020, [Appellant] filed a *pro se* [PCRA] petition. In his petition, he identified three issues: (1) unlawfully induced plea, (2) ineffective assistance of [plea] counsel, and (3) unreasonably extensive sentence.[4] On January 30, 2020, the court appointed Matthew Rapa, Esq. as counsel for [Appellant] and directed Attorney Rapa to file an amended PCRA or appropriate **Turner**/**Finley**[5] letter within thirty days. On February 19, 2020, Attorney Rapa filed a motion to withdraw as counsel along with accompanying **Turner**/**Finley** Letter. On March 5, 2020, [Appellant] filed a motion to proceed without counsel. On March 9, 2020, the court scheduled a hearing for the motion to withdraw as counsel for May 14, 2020. The court also issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907[, which stated that it "does not find that there is any basis upon which a hearing is necessary to decide this matter"].

. . . On October 6, 2020, [Appellant] filed his response to the court's notice of intent to dismiss. On October 14, 2020, the court scheduled a hearing for [Appellant's] motions for December 21, 2020. In [Appellant's] response to the court's notice of intent to dismiss, he asserted that Attorney Rapa's **Turner**/**Finley** letter

---

[4] The PCRA court essentially quoted Appellant's PCRA petition verbatim. **See** *Pro Se* PCRA Pet., 1/3/20, at 1.

[5] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

was defective and that the court should not have permitted him to withdraw as counsel.

PCRA Ct. Order, 1/11/21, at 1 n.1 (citations omitted and formatting altered). Appellant's Rule 907 response also claimed that PCRA counsel was ineffective by not raising plea counsel's ineffectiveness because Appellant denied that he intentionally killed Mr. Cancel. Rule 907 Resp., 10/6/20, at 1. The PCRA court, however, did not immediately enter an order granting Attorney Rapa permission to withdraw.[6]

On January 11, 2021, the PCRA court denied Appellant's PCRA petition. Order, 1/11/21. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.[7]

Appellant raises the following issues on appeal:

1. Did the PCRA court err[] by denying PCRA relief where Appellant established by a preponderance of evidence that he received ineffective assistance of counsel when counsel failed to object to defective colloquy and protect [Appellant] from pleading guilty to a crime he is innocent of committing?

_____

[6] During the pendency of this appeal, the PCRA court notified this Court that it failed to enter an order granting Attorney Rapa permission to withdraw. PCRA Ct. Op., 3/9/21, at 1. On April 14, 2021, this Court remanded, while retaining jurisdiction, to have the PCRA court enter the order granting Attorney Rapa permission to withdraw, which the trial court entered on May 7, 2021.

[7] On February 4, 2021, the PCRA court directed Appellant to file his Rule 1925(b) statement within twenty-one days. Appellant's Rule 1925(b) statement was postmarked on February 24, 2021, but docketed on March 1, 2021. *See Commonwealth v. Wilson*, 911 A.2d 942, 944 n.2 (Pa. Super. 2006) (stating, "[p]ursuant to the prisoner mailbox rule, a document is deemed filed when placed in the hands of prison authorities for mailing" (citation omitted and formatting altered)).

2. Was [plea] counsel ineffective for not properly informing [Appellant] of defenses as well as the elements of voluntary manslaughter so [Appellant] could make a knowing[] and intelligent plea; [Appellant] expressed protestation of innocence during colloquy?

3. Did the trial court abuse its discretion for not advising [Appellant] of the elements of the crime or distinguishing the plea from an **Alford**[8] type of plea when Appellant asserts factual innocence?

Appellant's Brief at 3.

We summarize Appellant's arguments for his first two issues together, as they are interrelated. In support of his first issue, Appellant argues that plea counsel was ineffective by failing to object to a defective colloquy. **Id.** at 16. In support of his second issue, Appellant argues that plea counsel was ineffective by not discussing potential defenses and stating the elements of voluntary manslaughter. **Id.** at 21.

By way of background, the trial court stated the elements of voluntary manslaughter, including an unreasonable belief of self defense, and Appellant repeatedly indicated he understood the trial court. N.T. Plea Hr'g, at 18-22. After the Commonwealth recited the factual basis for Appellant's plea, the following exchange occurred:

---

[8] **North Carolina v. Alford**, 400 U.S. 25 (1970). "An **Alford** plea is a *nolo contendere* plea in which the defendant does not admit guilt but waives trial and voluntarily, knowingly and understandingly consents to the imposition of punishment by the trial court." **Commonwealth v. Snavely**, 982 A.2d 1244, 1244 n.1 (Pa. Super. 2009) (citation omitted).

The court: . . . Now, you heard what the District Attorney stated, correct?

[Appellant]: Yes.

The court: And you understand this is his summary of the facts of this case; do you understand that?

[Appellant]: Yes.

The court: This is what he's saying the Commonwealth can prove in this case?

[Appellant]: Yes.

The court: Do you admit to firing two shots at Danny Cancel on February 28th, 2018 in Lehigh County?

[Appellant]: Yes.

The court: Do you admit that one of these shots struck him and killed him?

[Appellant]: Yes.

The court: And do you admit to all the facts and circumstances that [the assistant district attorney] and your attorney placed on the record as to how it was told?

[Appellant]: No.

The court: Well, okay. Do you admit that [Mr. Cancel] shot and killed your friend Mr. Hicks, correct?

[Appellant]: Yes.

The court: All right. And do you admit that you, after that, you pointed your weapon at him and fired two shots at him, correct?

[Appellant]: Yes.

The court: All right. Now, is there any part of the facts that you take issue with?

[Appellant]: Yeah. [The assistant district attorney] said it was a fact that I had my gun out; it wasn't. And he said it was a fact what I said to Ms. Perrin. I didn't say that.

The court: Okay. All right. But you did pull your gun out at some point?

[Appellant]: After I got shot, yes.

The court: After you got shot?

[Appellant]: Yes.

The court: He struck you?

[Appellant]: Yes.

The court: Okay. All right.

[Appellant's counsel]: The problem we have is that with [Mr.] Cancel's child -- I believe she was 14 or 15 at the time -- indicates that [Appellant] had the gun out,[9] and --

The court: I understand that.

[Appellant's counsel]: So that's where --

The court: What injuries did you sustain?

[Appellant]: Two fractured ribs and a collapsed lung and a gunshot wound to my chest.

The court: Okay. So that was after Cancel shot you?

[Appellant]: Yes.

The court: Okay. All right. And then -- but at some point, his weapon was empty and you shot him, correct?

_____

[9] Appellant's counsel noted that if Mr. Cancel's daughter's testimony was believed, Appellant's "provocation would negate self defense, and that would have been a jury question." N.T. Plea Hr'g at 34.

[Appellant]: Yes.

The court: All right. So you admit to that, right?

[Appellant]: Yes.

The court: Okay. Is that sufficient?

[Assistant district attorney]: Yes.

[Appellant]: No, I didn't know his gun was empty. How was I supposed to know that?

The court: All right. Well, you admit that you shot him?

[Appellant]: Yes.

The court: And you admit that at least one of those rounds that you shot, one of the two rounds that you shot him with killed him, correct?

[Appellant]: Yes.

The court: And you admit it was your intent to kill him when you fired at him, correct?

[Appellant]: No. No. That wasn't my intent to kill him. I was shooting in self defense. Imperfect self defense.

The court: Well, yeah, I understand that, but you can intend to kill somebody and still have imperfect self defense. I mean, you usually don't point a gun and fire it at somebody unless you intend to kill them. That's why I'm asking the question.

[Appellant]: Okay.

The court: All right. So, you weren't shooting at him with the intent to wounding him; am I correct?

[Appellant]: I mean, I didn't have no intent at the time.

The court: You were reacting?

[Appellant]: Yes.

The court: I get it. I get it.

[Appellant]: I wasn't thinking let me kill him.

The court: I understand. He was struck - it went into his --

[Assistant district attorney]: It went into his -- there was an injury to his arm.

The court: The left arm?

[Assistant district attorney]: The left arm and through his chest.

The court: So it went through the left arm into the chest?

[Assistant district attorney]: The most likely scenario is it goes into the left arm and into the chest and it goes to the lung, the pulmonary artery, and --

The court: So it was a side shot. It shot into the side?

[Assistant district attorney]: It was a side shot, but the forensic pathology indicates the direction is back. The anatomical direction is back. So, yes. It was a side shot.

The court: All right. Right? Do you admit to that?

[Appellant]: Yes.

The court: You satisfied with that?

[Appellant's plea counsel]: Yes, Your Honor.

[Assistant district attorney]: Yes.

The court: And once again, just so you understand, the agreement is voluntary manslaughter and possession of a firearm prohibited with a fixed 10 to 20 sentence.

[Appellant]: Yes.

The court: Do you understand that?

[Appellant]: Yes.

The court: All right. Based on what I've heard, I find the plea is voluntary and understandingly tendered, and I will accept the plea. Please have [Appellant] endorse the plea on the information for each count. I have reviewed the guilty plea colloquy form. I'm satisfied [Appellant] has answered all the questions on the form and has signed the form.

N.T. Plea Hr'g, at 39-43 (formatting altered). Appellant stated that no one threatened him to plead guilty and that he was pleading guilty of his own free will. *Id.* at 43.

With respect to the guilty plea colloquy form referenced above, Appellant initialed and signed the guilty plea colloquy form, which among other questions, asked Appellant if his lawyer explained "the elements of the crime or crimes that [he was] pleading guilty to?" Guilty Plea Colloquy, 5/13/19, at 3. Appellant checked "Yes" and initialed the page. *Id.* Having summarized the relevant background, we next summarize Appellant's arguments.

In support of his first issue, Appellant argues that he denied intentionally killing the victim and maintains that he only acted in self defense. Appellant's Brief at 16. Appellant asserts that given his claim of self defense, plea counsel should have objected, the trial court should have refused the plea, and the PCRA court erred by dismissing his petition. *Id.* at 19. With respect to his second issue, Appellant argues that plea counsel was ineffective by not stating

the elements of voluntary manslaughter or informing him of any alternative defenses. *Id.* at 20-21.

In reviewing Appellant's claims, we are guided by the following principles:

> [O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

> *    *    *

> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

> *    *    *

> Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and formatting altered), *appeal denied*, 216 A.3d 1029 (Pa. 2019).

> A criminal defendant's right to effective counsel extends to the plea process, as well as during trial. Under the PCRA, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the petitioner to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

> To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. This is not a stringent requirement. The reasonable probability test refers to a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Brown*, 235 A.3d 387, 391 (Pa. Super. 2020) (citations omitted and formatting altered).

In *Commonwealth v. McCauley*, 797 A.2d 920 (Pa. Super. 2001), this Court explained the prejudice required as

> similar to the "manifest injustice" standard applicable to all post-sentence attempts to withdraw a guilty plea. The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [the defendant's] decision to plead guilty be knowingly, voluntarily and intelligently made.
>
> Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.

*McCauley*, 797 A.2d at 922 (citations omitted and formatting altered). We add that a valid guilty plea colloquy inquires into the factual basis for the plea and the nature and elements of the charges. *See id.*

Criminal homicide includes voluntary manslaughter, which is defined by the Crimes Code in relevant part as follows:

**(a) General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed . . .

**(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. § 2503(a)-(b); *see also id.* § 2501.

Under Chapter 5, self defense falls under the defense of justification, which is a complete defense to criminal liability. *See id.* § 502. Section 505(a) of the Code provides:

**(a) Use of force justifiable for protection of the person.—** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

*Id.* § 505(a).

However, Section 505(a) is limited by Section 505(b)(2):

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . .

*Id.* § 505(b)(2). Finally, a "specific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Jones*, 610 A.2d 931, 938 (Pa. 1992) (citation omitted and formatting altered).

Instantly, following our review of the record and the parties' briefs, we conclude that the record supports the PCRA court's order denying relief. Firstly, with respect to Appellant's argument that he denied intentionally killing Mr. Cancel, he fails to recognize that even when acting in self defense, a specific intent to kill can be inferred from firing a gun at the victim. *See id.* Therefore, to the extent Appellant denies shooting Mr. Cancel with an intent to kill, because Appellant failed to establish an error of law, he did not establish plea counsel's ineffectiveness. *See id.*; *Brown*, 235 A.3d at 391 (explaining that a defendant must plead and prove counsel's error caused him to enter an involuntary plea). Second, the record, as summarized herein, reflects that the trial court and Appellant's lawyer explained, and Appellant understood, all of the elements of the crimes at issue. *See, e.g.*, N.T. Plea Hr'g, at 18-22; Guilty Plea Colloquy at 3. Third, Appellant failed to identify any alternative defense such that his plea was involuntary or unknowing. *See Brown*, 235 A.3d at 391. Therefore, Appellant's boilerplate allegation does not satisfy his burden that plea counsel was ineffective. *See Sandusky*, 203 A.3d at 1043-44. In sum, Appellant's first two issues are generally premised on a misunderstanding of the legal definition of an intentional killing and imperfect

self defense. For these reasons, because Appellant failed to establish plea counsel should have objected on the basis of a misstatement of the law, a defective colloquy, and by not stating the elements of voluntary manslaughter, Appellant did not establish plea counsel was ineffective. *See Brown*, 235 A.3d at 391; *McCauley*, 797 A.2d at 922 (stating requirements for a valid guilty plea colloquy).

Lastly, Appellant argues that the **trial court** abused its discretion by not stating the elements of persons not to possess a firearm and voluntary manslaughter. Appellant's Brief at 24-26. Appellant further argues that his plea was involuntary under *Alford*, and that plea counsel threatened Appellant that he would receive a life sentence if he did not accept the plea. *Id.* at 28.

Initially, to the extent that Appellant argues the **trial court** erred by not stating the elements, such a claim could have been raised in a pre- or post-sentence motion to withdraw his guilty plea or on direct appeal. Appellant did neither and therefore he cannot raise this issue for the first time in his PCRA petition. *See* 42 Pa.C.S. § 9544(b). Further, the record establishes that the trial court actually stated the elements for voluntary manslaughter, and that Appellant signed a written guilty plea colloquy indicating that his counsel explained all of the elements of the offenses at issue and no one forced him to accept the plea. *See* N.T. Plea Hr'g, at 18-22; Guilty Plea Colloquy at 3, 8. Appellant is bound by, and cannot contradict, his colloquy. *See McCauley*, 797 A.2d at 922. Further, Appellant waived his *Alford* plea argument as it

was not within his Rule 1925(b) statement or otherwise raised in his PCRA petition. **See** Pa.R.A.P. 1925(b)(4). Finally, to the extent that Appellant argued that PCRA counsel was ineffective by not arguing plea counsel's ineffectiveness, PCRA counsel cannot be ineffective for raising a meritless claim. **See Commonwealth v. Bradley**, --- A.3d ---, ---, 2021 WL 4877232, at *7, 19 (Pa. filed Oct. 20, 2021) (providing that a PCRA petitioner may raise claims of ineffectiveness of PCRA counsel for the first time on appeal); **Commonwealth v. Spotz**, 896 A.2d 1191, 1210 (Pa. 2006) (stating "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim"). For these reasons, because Appellant failed to establish his plea counsel was ineffective, the PCRA court correctly denied relief. **See Sandusky**, 203 A.3d at 1043-44.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/06/2022